# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENNETH J. WOLF and KJW, LLC, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | No. 07 C 2218 |
| ) | |
| FORD KENNELLY, ROSENTHAL ) | Judge Rebecca R. Pallmeyer |
| COLLINS GROUP, LLC, and ) | |
| LAWRENCE SPAIN, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION AND ORDER

Ford Kennelly claims that he lost more than $150,000 in bad investments and $235,000 in commissions due to the "boiler room" operations of his brokers. Kennelly took his dispute to arbitration, where he won an award of compensatory and punitive damages in excess of $1 million. Rosenthal Collins Group, LLC ("RCG"), who acted as Kennelly's commodities broker, filed a Petition to Vacate that arbitration award in this court. Shortly thereafter, petitioners Kenneth J. Wolf and KJW, LLC ("KJW") brought this separate action against Kennelly in Illinois state court, seeking to vacate the arbitration award and to resolve an indemnity dispute between Wolf and respondent RCG. Without RCG's acquiescence, Kennelly removed that action to federal court, where it was declared related to RCG's lawsuit.

Wolf and KJW have now moved for remand of the case they filed, arguing that removal was not proper because RCG, a respondent in the state action is an Illinois resident and did not consent to removal. In addition, Wolf and KJW contend that, if RCG were realigned as a petitioner, diversity jurisdiction would be defeated. Counsel for RCG has twice stated in open court that, if this lawsuit is remanded to Illinois state court, it will voluntarily dismiss its earlier-filed Petition to Vacate and litigate its claims against Kennelly in the state court action. In response, Kennelly has asked the court to sever Wolf's indemnity claim from this lawsuit. For the reasons explained below, the court concludes that unresolvable jurisdictional defects require remand of this dispute to state court.

**FACTUAL BACKGROUND**

**I.     The Parties**

The relationship among the parties to this action dates back to 2003.  KJW, a limited liability company with its principal place of business in Florida, was at all relevant times registered with the Commodity Futures Trading Commission ("CFTC") as an introducing broker.  (Pet. to Vacate ¶ 2, Ex. C to Pet. to Remove; Kennelly's Opp. to Wolf and KJW, LLC's Mot. for Remand ("Kennelly's Opp.") at 2.)[1]  KJW's members are all Florida citizens.  (Pet. to Remove ¶ 18.)  Wolf, a Florida citizen and resident, was at all relevant times registered with the CFTC as the principal of KJW.  (Pet. to Vacate ¶ 1; Kennelly's Opp. at 2.)  Nominal respondent Lawrence S. Spain, a Florida citizen and resident, is the KJW employee who solicited Kennelly to open an account.  (Pet. to Vacate ¶¶ 5, 9.)  KJW and Wolf serviced Kennelly's account and introduced him to RCG, which acted as the futures commission merchant that cleared Kennelly's trades.  (Kennelly's Opp. at 2.)  In October 2003, Kennelly, an Indiana citizen and resident, signed an RCG Commodity Customer Agreement and opened an account to speculate in commodity options.  (RCG Commodity Customer Agreement, Ex. A to Kennelly's Opp.; Pet. to Vacate ¶¶ 3, 8.)  Pursuant to that agreement, RCG accepted Kennelly's account and agreed to act as his commodities broker.  (RCG Commodity Customer Agreement.) Kennelly contends that the "boiler room" operations of RCG, KJW, and Wolf convinced him to open this account, and that he suffered severe losses as a result.[2]

As a result of losses he suffered, Kennelly filed arbitration proceedings against RCG, KJW, Wolf, and Spain before the National Futures Association ("NFA"), *Kennelly v. Rosenthal Collins*

---

[1]     An introducing broker is a "futures broker who has a direct relationship with a client, but delegates the work of the floor operation and trade execution to another futures merchant." *See* http://www.investopedia.com/terms/i/introducingbroker.asp.

[2]     "Dishonest brokers set up 'boiler rooms' where a small army of high-pressure salespeople use banks of telephones to make cold calls to as many potential investors as possible. These strangers hound investors to buy 'house stocks'—stocks that the firm buys or sells as a market maker or has in its inventory." *See* http://sec.gov/answers/boiler.htm.

*Group, LLC*, NFA Case No. 05-ARB-85. (Award, Ex. A to Pet. to Remove.) In December 2006, a panel of three NFA arbitrators entered a unanimous award for Kennelly of: $385,286.12 in compensatory damages (plus interest), $154,000 in attorneys' fees, and $4,100 in costs. (*Id.*) The panel held RCG, KJW, Wolf, and Spain jointly and severally liable for that award. (*Id.*) In addition, the panel held Wolf solely liable for an award of $750,000 in punitive damages. (*Id.*) In response to a Motion for Reconsideration, the panel entered a modified award in February 2007, which awarded the same relief but clarified that attorneys' fees were awarded pursuant to Indiana state law. (Modified Award, Ex. B to Pet. to Remove.) Petitioners Wolf and KJW challenge that arbitration award in this lawsuit. For purposes of this action, the parties dispute whether RCG should be considered a respondent, realigned as a petitioner, or altogether severed from this action based on principles of misjoinder. RCG is an Illinois limited liability company with its principal place of business in Illinois. (*Id.* ¶ 4.) As discussed below, however, RCG's members appear to include one Indiana resident. (*See* Letter from J. Schulman to R. Pallmeyer of 12/11/07, Docket Entry No. 43.) Thus, the question of its proper status in the proceedings implicates jurisdictional principles.

**II.     Procedural History**

On March 13, 2007, RCG filed a Petition of Rosenthal Collins Group, LLC to Vacate Arbitration Award in this court, *Rosenthal Collins Group, LLC v. Kennelly*, Case No. 07 C 1421. Soon after, on March 26, 2007, Wolf and KJW filed a Petition to Vacate in the Circuit Court of Cook County, Chancery Division, *Wolf v. Kennelly*, 07 CH 8610. (Pet. to Vacate.) The Petition to Vacate named Wolf and KJW as petitioners and Kennelly, RCG, and Spain as respondents. (*Id.*) In that Petition, Wolf and KJW contended that the arbitration award should be vacated and, in the alternative, sought a declaratory judgment that Wolf owes RCG no indemnity obligation on any portion of Kennelly's award. (*Id.* at 1-2.) On April 23, 2007, Kennelly removed the action to this court. (Pet. to Remove.) The caption on Kennelly's Removal Petition aligns the parties in the same way that the Petition to Vacate had, with Wolf and KJW as petitioners and Kennelly, RCG, and

3

Spain as respondents. (*Id.*) But the removal statute, 28 U.S.C. § 1441 precludes removal where any defendant is non-consenting or an Illinois citizen, and RCG is both. Kennelly's Petition to Remove therefore asserts that RCG should be realigned as a petitioner because, like Wolf and KJW, RCG's primary interest is in vacating the arbitration award. (*Id.* ¶ 9.) Arguing against realignment, Wolf and KJW moved to remand the action to the Circuit Court of Cook County on the grounds of the absence of diversity jurisdiction and procedural defects in the removal papers.[3]

On December 7, 2007, Wolf and KJW asked for leave to file an Amended Petition in this case. (Docket Entry No. 38.) Wolf and KJW informed the court that at least one of RCG's members was in fact an Indiana citizen at the time they filed their Petition to Vacate in the Circuit Court of Cook County. (*Id.* ¶ 2.) On December 11, 2007, the court ordered RCG to specify the identity and citizenship of each of its members at the time the Petition to Vacate was filed. (Docket Entry No. 40.) If any of RCG's members is a citizen of Indiana, RCG could not be realigned as a petitioner without defeating diversity jurisdiction, since Kennelly is an Indiana citizen.[4] Wolf's and KJW's Amended Petition, filed on December 13, 2007, asserted that one of RCG's members is an Indiana resident. A letter RCG sent to the court identifies three classes of members. (Docket Entry No. 43.) Its Class A members, or managing members, and two Illinois limited liability companies own 95% of RCG and are all Illinois citizens and residents. (*Id.*) Its Class B members, or individuals associated with RCG and required to be listed as members due to industry rules and regulations, are all Illinois citizens residents as well. (*Id.*) Its Class C members, who deposit trading capital with RCG to clear and trade futures products, include one Indiana citizen and resident. (*Id.*) There are approximately 50-75 class C members, none of whom own more than

---

[3] To correct a typographical error, Wolf and KJW filed an Amended Motion and Supporting Memorandum on May 24, 2007. (Docket Entry No. 20, hereafter "Mot. to Remand.")

[4] Because Spain is a nominal respondent only, his citizenship is not relevant for jurisdictional purposes. *See Jones v. Griffith*, 870 F.2d 1363, 1366 (7th Cir. 1989) (court declines to consider citizenship of "nominal parties, whose presence does not affect jurisdiction").

1/10 of 1% of RCG; in the aggregate, Class C members own 5% of RCG.  (*Id.*)  RCG has also asserted that it would prefer to litigate all issues in state court and will dismiss its pending petition in the 07 CV 1421 case if the court grants Wolf and KJW's motion for remand.  (Jt. Supp. Br. of RCG, Wolf, and KJW, Inc. in Further Supp. of Mot. for Remand at 1.)  RCG has echoed this preference in open court.  More importantly, given this information, RCG's claim that the court has diversity jurisdiction over its claims cannot be accurate.

To confirm the assertion that one of RCG's members was an Indiana citizen when the Petition to Vacate was filed, the court directed RCG to produce documents reflecting the citizenship of all of its members at that time.  (Docket Entry No. 46.)  Then, on January 10, 2008, Kennelly moved to sever the action seeking to vacate the arbitration award from the action for declaratory relief regarding Wolf's indemnity obligations.  Kennelly argued that the declaratory count regarding indemnification was joined in the Petition to Vacate only to defeat diversity jurisdiction and that the joinder is improper under Federal Rules of Civil Procedure 20 and 21.  (Kennelly's Mem. of Law in Supp. of His Mot. to Sever ("Mot. to Sever").)  For the first time, this Motion to Sever contains a caption classifying Wolf and KJW as the petitioners and counter-respondents, Kennelly as the respondent and counter-petitioner, and RCG and Spain as third-party counter-respondents.  (*Id.*)[5] Despite this, the court concludes that it is without jurisdiction to resolve this dispute, which was improperly removed from state to federal court.  Thus, the court grants Wolf's and KJW's motion to remand and denies Kennelly's motion to sever.

## DISCUSSION

**I.   Removability**

    **A.   Legal Standard**

---

[5]  Kennelly's Reply brief goes even farther, labeling Wolf and KJW as petitioners and counter-respondents and Kennelly as a respondent and counter-petitioner but never identifying RCG and Spain as parties at all.  (Docket Entry No. 52.)  Here, the court uses the original caption assigned to the case and disregards those changes.

The court's analysis begins with Wolf's and KJW's Motion to Remand. Although he is the non-movant, Kennelly, who removed the case to this court, bears the burden of establishing the federal court's jurisdiction. *Morrow v. DaimlerChrysler Corp.*, 451 F. Supp. 2d 965, 966 (N.D. Ill. 2006) (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)). Federal courts must construe the removal statute narrowly, which creates a "strong presumption in favor of remand." *Id.* (quoting *Doe*, 985 F.2d at 911); *see also Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 715 (7th Cir. 2000) ("The removal statute should be construed narrowly and any doubts about the propriety of removing a particular action should be resolved against allowing removal."). This protects the plaintiff's right to choose his or her own forum:

> Federal courts are courts of limited jurisdiction. While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim. Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.

*In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp. 1181, 1185 (N.D. Ill. 1996) (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).

### B.     RCG as a Respondent

With RCG as a respondent, as the lawsuit is currently arranged, removal was improper. First, because jurisdiction does not rest on a federal question, it is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Thus, so long as RCG–an Illinois limited liability company, the majority of whose members are Illinois citizens–is a respondent, the state court action was not removable. Second, the courts have interpreted the statutory language providing for removal "by the defendant or the defendants" as requiring that all defendants consent to removal. 28 U.S.C. § 1441(a); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003); *see also Phoenix Container, L.P. v. Sokoloff*, 235 F.3d 352, 353 (7th Cir. 2000) (that all defendants joined the notice of removal was

6

an essential step). In this case, RCG made clear, before Kennelly removed the action to federal court, that it was "not willing to provide such consent and believes that it will be advantageous for all parties to litigate all issues in the pending state court action." (Letter from J. Schulman to K. Berg of 4/16/07, Ex. B to Mot. to Remand.) There is no basis for viewing RCG as a nominal respondent. Therefore, as Kennelly himself recognizes, pursuant to section 1441 this action is only removable if RCG is realigned as a petitioner in the action.

### C.    RCG as a Petitioner

The parties initially assumed that realignment would cure the jurisdictional problem, because they understood that RCG is an Illinois citizen, thus diverse in citizenship from Kennelly. In fact, however, the citizenship of a limited liability company is the citizenship of each member of that company. As the Seventh Circuit has explained repeatedly:

> [A]ll corporations are to be treated alike for diversity purposes: all are citizens both of the state of incorporation and the state in which the corporation has its principal place of business. . . . The citizenship for diversity purposes of a limited liability company, however, despite the resemblance of such a company to a corporation (the hallmark of both being limited liability), is the citizenship of each of its members.

*Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006) (collecting cases) (internal citations omitted). *See also Belleville Catering Co. v. Champaign Market Place, L.L.C.,* 350 F.3d 691 (7th Cir. 2003) (directing counsel who failed to recognize the absence of diversity under this principle to re-litigate their dispute in state court without charge to their clients).[6]

In any event, as discussed below, the court is not persuaded that realignment is proper. It appears that there is an actual, substantial controversy between Wolf and RCG. "Realignment is proper when the court finds that no actual, substantial controversy exists between parties on one

---

[6] Kennelly has suggested that he will take limited discovery on the citizenship of the RCG member who claims to be an Indiana resident. (Reply in Supp. of Mot. to Sever at 2 n.*.) Apparently, he seeks leave to establish that diversity jurisdiction does exist, if RCG is realigned as a petitioner. But Kennelly, as the party seeking to remove the lawsuit from state court, bore the burden of demonstrating that the case was, indeed removable at the time it was removed.

side of the dispute and their named opponents . . . ." *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981). When determining whether realignment is proper, courts must focus on "the points of substantial antagonism, not agreement." *Id.* at 151. Realignment is "undoubtedly improper" if "an actual, substantial controversy exists between a party on one side of the dispute and its named opponent." *Krueger v. Cartwright*, 996 F.2d 928, 932 n.5 (7th Cir. 1993). But "a mere mutuality of interest in escaping liability" does not mandate realignment. *Am. Motorists*, 657 F.2d at 151; *see also Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 788 (7th Cir. 1992) (finding realignment improper where "insurance company brought the present suit in order to disclaim any liability it might have either to . . . the insured (or rather the half owner of the insured), or to [the insurded's] victims; therefore the plaintiff in this suit really is the adversary of all the defendants").

Here, there is no dispute that RCG, Wolf, and KJW all seek to escape liability to Kennelly. But there is an actual, substantial controversy between Wolf and RCG as well: because RCG has indicated an intent to seek indemnification from Wolf for its joint and several liability for the arbitration award, Section VII of the Petition to Vacate is Wolf's claim for declaratory relief that he has no contractual or common law obligation to indemnify RCG. (Pet. to Vacate ¶¶ 149-159.) Kennelly himself acknowledges that in the declaratory action, RCG's interests are opposed to Wolf's interests. (Pet. to Remove ¶ 20.)

Kennelly nevertheless urges that the "principal" dispute in this action is RCG's, Wolf's, and KJW's liability to Kennelly. (Kennelly's Opp. at 5.) There is a circuit split on the issue of whether realignment is proper under these circumstances:

> What seems to be emerging as the majority view has come to be called the "principal purpose" or "primary issue" test, since it looks to Justice Frankfurter's language in [*City of Indianapolis v. Chase National Bank*, 314 U.S. 63 (1941)] about looking to the "principal purpose of the suit" and the "primary controlling matter in dispute." When this test is used the insurers are aligned as plaintiffs [against insureds] and diversity is destroyed. Other courts, however, have interpreted *City of Indianapolis* to mean that realignment is improper if there is any "actual and

8

> substantial conflict" between the parties. Courts adopting this test have held, in the situation described, that the mere fact that defendant insurers share an interest with the plaintiff insurer in avoiding liability to the insured does not require realignment since there are issues among the insurers as to the duty to defend and which insurer is liable for what.

13B Charles Alan Wright et al., *Federal Practice & Procedure* § 3607 (2007 Supp. at 417-18). One of the cases adopting the "actual and substantial conflict" test, according to the treatise, is *American Motorists*, a Seventh Circuit decision. *Id.* at § 3607, n. 52; *see also Am. Motorists*, 657 F.2d at 149; *Krueger*, 996 F.2d at 932; *Truck Ins.*, 951 F.2d at 788.

In the absence of any argument from either party that the Seventh Circuit has or should adopt the "primary purpose" test instead, the court is not inclined to depart from governing precedent.[7] And it is undisputed that there is an actual and substantial conflict between Wolf and RCG regarding indemnity issues. As a result, Kennelly's reliance on *Pietras v. Sentry Insurance Company*, where the court found that the plaintiff's "present dispute is *solely* with Sentry" and therefore realigned the other named defendant to be a plaintiff, is misplaced. Case No. 06 C 3576, 2006 U.S. Dist. LEXIS 83256, at *5 (N.D. Ill. Nov. 3, 2006) (emphasis added). *Pietras* holds that if there is no actual and substantial conflict between a plaintiff and a fraudulently-joined defendant, realignment is proper. *Id.* at *7-8. Unlike in *Pietras*, there is a real dispute between Wolf and RCG. The court declines to realign the parties in this action and therefore finds that, even if RCG has no Indiana members, removal was not proper under 28 U.S.C. § 1441(a) & (b).

## II. Motion to Sever

Apparently to cure these jurisdictional defects, Kennelly has filed its Motion to Sever, asking

---

[7] Thus, the court declines to follow *Naiditch v. Banque de Gestion Privee-SIB*, No. 92 C 5290, 1993 WL 424248 (N.D. Ill. Oct. 19, 1993), a case on which Kennelly relies. The *Naiditch* court cited *American Motorists* but ultimately departed from that holding. The *Naiditch* court found that an "actual and substantial" conflict between the defendant and another entity rendered "insubstantial in comparison" the conflict between plaintiff and that entity. *Id.* at *5. Thus, the court realigned the entity as a plaintiff and characterized its realignment as being supported by *American Motorists. Id.* at *4. Apparently, then, *Naiditch* read *American Motors* as articulating a "primary purpose" test; this court respectfully disagrees.

that the court sever the indemnity dispute from the Petition to Vacate. Kennelly has not made a showing that severance is necessary or proper and, accordingly, the court declines to separate these disputes.

### A. Fraudulent Misjoinder

It might be proper to sever these disputes if Kennelly could establish that they were misjoined in the first place. "Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent. In determining whether there is diversity of citizenship, parties fraudulently joined are disregarded." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Id.* Here, there is no allegation that the petitioners committed outright fraud in crafting the jurisdictional statement. Accordingly, the question is whether there is any possibility that Wolf can state a cause of action for declaratory relief against RCG. Wolf's motives are not relevant to this inquiry. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). And Kennelly bears "a heavy burden to establish fraudulent joinder." *Id.* Fraudulent joinder only exists if–when all issues of fact and law are resolved in petitioners' favor–Wolf has no possible cause of action against RCG. *Id.*

Kennelly claims that *he* "has no interest whatsoever in the dispute between Mr. Wolf and RCG as to whether he, personally, must indemnify RCG." (Mot. to Sever at 3.) This comment implicitly acknowledges that a genuine indemnity dispute does exist between Wolf and RCG. Kennelly suggests that the dispute is "premature" because the arbitration award might still be vacated (a result that Kennelly himself, of course, fervently opposes). (*Id.* at 3-4.) But Kennelly may well prevail in obtaining an order enforcing the award, with the result that a court may need to resolve the indemnity dispute between Wolf and RCG. Kennelly's contentions therefore fall short of the standard necessary to establish fraudulent joinder.

B.  **Procedural Misjoinder**

While Kennelly does not directly invoke "procedural misjoinder," the court nevertheless considers whether that doctrine might justify severing the indemnity action from the arbitration dispute. The Seventh Circuit has not expressly recognized procedural misjoinder, which the Eleventh Circuit debuted in 1996. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996). In *Tapscott*, the court did "not hold that mere misjoinder is fraudulent joinder" but rather that where joinder "is so egregious as to constitute fraudulent joinder," removal is proper. *Id.* In subsequent decisions, authorities have noted that the doctrine of procedural misjoinder "adds a further level of complexity–and additional litigation–to a federal court's decision regarding removal jurisdiction." 14B Charles Alan Wright et al., *Federal Practice & Procedure* § 3723 at 658 (3d ed. 1998). Thus, this court approaches the doctrine with caution. Notably, some courts have explicitly refused to adopt the procedural misjoinder doctrine as a basis for extending litigant's ability to remove, on the ground that such expansion is properly left to Congress. *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 852 (S.D. Ill. 2006) ("In the Court's view, the *Tapscott* doctrine is an improper expansion of the scope of federal diversity jurisdiction by the federal courts."); *Sabo v. Dennis Techs., LLC*, No. 07-cv-283-DRH, 2007 WL 1958591, at *8 (S.D. Ill. July 2, 2007) ("The Court concludes that the decision to enlarge the scope of federal diversity jurisdiction on removal through the adoption of the fraudulent misjoinder doctrine is one for Congress to make.") (collecting cases); *Moore v. Mobil Oil Corp.*, 904 F. Supp. 587, 588 (E.D. Tex. 1995) ("it is abundantly clear that Congress has not vested in federal district courts the power to fashion equitable removal solutions to procedural complexities."). Given the genuine indemnity dispute between Wolf and RCG, the court need not reach the question of whether to recognize procedural misjoinder, as joinder in this case was not egregious and therefore cannot trigger *Tapscott.*

In any event, it is the state court, and not this court, who should determine whether procedural misjoinder exists here: it is most proper for "the removing party [to] challenge the

misjoinder in state court before seeking removal" because "removal is not possible until the misjoined party that destroys removal jurisdiction is dropped from the action. . . ." 14B Charles Alan Wright et al., *Federal Practice & Procedure* § 3723 at 658 (3d ed. 1998); *see also Rutherford*, 428 F. Supp. 2d at 851 ("In the Court's view, whether viable state-law claims have been misjoined -- even 'egregiously' misjoined -- is a matter to be resolved by a state court."); *Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004) ("the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court"); *In re Norplant Contraceptive Prods. Liab. Litig.*, 976 F. Supp. 559, 561 (E.D. Tex. 1997) (court "decline[d] to exercise subject matter jurisdiction unless and until the diverse parties are formally severed prior to removal from the nondiverse parties pending in the state court case."). The court declines to invoke procedural misjoinder in this case.

## **CONCLUSION**

The court therefore denies Kennelly's Motion to Sever (49). The court grants Wolf's and KJW's Motion to Remand (18) and Amended Motion to Remand (20) and orders this case remanded to the Circuit Court of Cook County for further proceedings. As explained above, the court lacks diversity jurisdiction over the related case, *Rosenthal Collins Group, LLC v. Kennelly*, Case No. 07 C 1421 and will therefore enter an order dismissing that case as well, without prejudice to RCG's pursuing its challenge to the arbitration award in state court.

ENTER:

Dated: February 12, 2008

_____
REBECCA R. PALLMEYER
United States District Judge